**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAUDIO TUNDO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PASSAIC COUNTY, et al., <br><br> Defendants. | Civil Action No. 09-5062 (ES) (MAH) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Pending before the Court are Plaintiffs Claudio Tundo and Ruben Gilgorri's (together, "Plaintiffs") motion for reconsideration (D.E. No. 139)[1] and Defendants Passaic County Sheriff's Department ("PCSD"), PCSD Warden Charles Meyers, and PCSD Sheriff Jerry Speziale's (together, "Defendants") motion for summary judgment (D.E. Nos. 174 & 175).[2] The Court has jurisdiction under 28 U.S.C. § 1331. Having considered the parties' submissions in support of and in opposition to the instant motions, the Court decides the motions without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court DENIES Plaintiffs' motion for reconsideration and GRANTS Defendants' motion for summary judgment.

---

[1] Plaintiff James Racanelli has settled his claims against all Defendants, so the Court will not address Racanelli's claims in this Opinion. (*See* D.E. No. 180-3 at 1, 3; D.E. No. 174-1 ¶ 2 ("All claims with regard to plaintiff James Racanelli are moot, as the parties have resolved his alleged claim.")).

[2] PCSD Sheriff Jerry Speziale filed a cross-motion for summary judgment where he "rel[ies] upon the Certification of Albert C. Buglione, Esq., the Exhibits attached to the Certification, the Procedural History, Statement of Facts and Legal Argument filed by Albert C. Buglione, Esq. in support of the Motion for Summary Judgment filed on behalf of the County of Passaic and Warden Charles Meyes on December 8, 2017." (D.E. No. 175 at 2). As such, the Court will treat the PCSD's and PCSD Warden Charles Meyers's motion for summary judgment and PCSD Sheriff Jerry Speziale's cross-motion as one motion and refer to it as such throughout this Opinion.

1

## I. BACKGROUND[3]

*Facts.* Tundo was employed by the PCSD as a corrections officer in January 2005. (Defs. SMF ¶ 1). Gilgorri was employed by the PCSD as a corrections officer in December 2005. (Pls. SMF ¶ 9). In March 2008, the PCSD announced a reduction in force pursuant to a mass lay-off plan. (*Id.* ¶ 12). As a result, Plaintiffs were laid off effective March 8, 2008. (*Id.*).

In August 2008, PCSD sought to re-hire corrections officers and requested that the Civil Service Commission ("CSC") revive the eligible list for Plaintiffs' position to permit the reappointment of individuals who had been laid off. (*Id.* ¶¶ 15-17; Defs. SMF ¶ 9). On September 25, 2008, the CSC issued a decision ordering (i) eligible list S9999D to be revived and for Tundo's name to be restored to that list; and (ii) eligible list S9999F to be revived and for Gilgorri's name to be restored to that list. (Defs. SMF ¶ 10; D.E. No. 180-7, Lockman Decl. Ex. U ("CSC September 25, 2008 Decision") at 6).[4]

After the eligible lists were revived, PCSD sought to remove Plaintiffs from the lists based on Plaintiffs' work history, disciplinary history, and other related issues. (Defs. SMF ¶ 14). On January 15, 2009, the CSC issued a notice of Disposition Deficiency to the PCSD for failure to rehire Plaintiffs, which the PCSD appealed. (*Id.* ¶¶ 15-16). As a result of the PCSD's appeal, the CSC issued a Final Administrative Action notice, dated May 27, 2009. (*Id.* ¶ 17; D.E. No. 174-3, Buglione Decl. Ex 2 ("CSC May 27, 2009 Decision") at 1, 14).

---

[3] The Court distills these facts from (i) Statement of Undisputed Material Facts in Support of Defendants County of Passaic and Warden Charles Meyers' Motion for Summary Judgment Pursuant to F.R.C.P. 56(c) and L. Civ. R. 56.1 (D.E. No. 174-1 ("Defs. SMF")); (ii) Plaintiffs' Response to Defendants' Statement of Facts Pursuant to Rule 56.1 (D.E. No. 180-1 ("Pls. Counter SMF")); (iii) Plaintiffs' Counter-Statement of Facts Per Local Rule 56.1 (D.E. No. 180-2 ("Pls. SMF")); (iv) Defendants' Response to Plaintiffs' Counter-Statement of Facts Pursuant to Local Rule 56.1 (D.E. No. 183 ("Defs. Counter SMF")); and (v) exhibits accompanying the parties' submissions. Unless otherwise noted, these background facts are undisputed.

[4] Following the parties' approach, the Court will refer to eligible list S9999D and eligible list S9999F together as "eligible lists" or "reemployment lists."

The CSC May 27, 2009 Decision states in relevant part that:

> Tundo . . . and Gilgorri, should be restored to the list and absent any disqualifications ascertained through an updated background check, should be appointed as County Correction Officers subject to completion of a new 12-month working test period. Should they be unsuccessful [in] completing their working test periods, the Sheriff's Department may release them in accordance with N.J.A.C. 4A:2-4.1.

(CSC May 27, 2009 Decision at 13).

The PCSD's policy was that officers who had been laid off for a year had to complete new reemployment applications, but those who had been laid off for less than a year did not have to submit reemployment applications. (Pls. Counter SMF ¶ 19; Defs. SMF ¶ 21). The initial employment applications and the reemployment applications at issue are identical and both contain an identical "hold harmless" clause. (Defs. SMF ¶ 22; Pls. Counter SMF ¶ 22). Plaintiffs were required to complete the employment application and sign a "hold harmless" clause when they originally applied for positions with the PCSD. (Defs. SMF ¶ 23; Pls. Counter SMF ¶ 23). Because Plaintiffs had been laid off for over a year, Defendants offered to rehire Plaintiffs once they completed their reemployment applications and passed updated background checks. (Defs. SMF ¶ 24; Pls. Counter SMF ¶ 24). Plaintiffs refused to complete the reemployment application and were subsequently removed from the eligible list. (Defs. SMF ¶ 25; Pls. Counter SMF ¶ 25).

*Procedural History.* On October 2, 2009, Plaintiffs filed the instant 42 U.S.C. § 1983 action against PCSD, PCSD Sheriff Speziale, and PCSD Warden Charles Meyers challenging their removal from the eligible list and alleging violation of their rights under the Fourteenth Amendment's Equal Protection Clause (Count I) and Due Process Clause (Count II). (D.E. No. 1, Compl. at 10-11). In fall 2013, the parties submitted summary-judgment briefing to this Court. (*See* D.E. Nos. 108, 109, 114, 119 & 120). The parties thereafter agreed to mediation, and the Court terminated the pending summary-judgment motions without prejudice. (D.E. No. 126). On

January 23, 2015, the mediator informed the Court that the matter had not been resolved. (D.E. No. 127). Defendants refiled their motions for summary judgment (*see* D.E. Nos. 130, 132-34), and Plaintiffs opposed Defendants' motion (*see* D.E. No. 131). The Court heard oral arguments on Defendants' motion on December 22, 2015, and issued oral rulings following the parties' arguments. (*See* D.E. No. 138; D.E. No. 180-6, Exhibit F (December 22, 2015 Oral Argument Transcript) ("Tr.")). The Court then memorialized its rulings in an Order entered on the docket the same day. (D.E. No. 137).

At the December 22, 2015 hearing, the Court addressed several issues. (*See generally* Tr.). *First*, the Court addressed whether the District Court or the CSC is the proper forum for Plaintiffs to assert their § 1983 claims. (*Id.* at 2-4). The Court held that Plaintiffs' claims are properly before the Court and declined to dismiss the Complaint. (*Id.*). *Second*, the Court addressed whether Defendants are entitled to summary judgment on Plaintiffs' equal-protection claim, which Plaintiffs' voluntarily dismissed at the hearing. (*Id.* at 5). *Third*, the Court addressed whether Plaintiffs pleaded a claim under the Substantive Due Process Clause of the Fourteenth Amendment. (*Id.* at 6-17). Following the parties' oral arguments, the Court held that Plaintiffs "did not assert a substantive due process claim in the Complaint and they are barred from now asserting such a claim." (*Id.* at 75-76). The Court barred Plaintiffs from asserting such a claim because even assuming that Plaintiffs did assert a substantive-due-process claim, they had nevertheless failed to establish the requisite elements, namely (i) "a fundamental property interest that is protected by the United States Constitution"; and (ii) "the government deprivation of that protected interest that is so arbitrary or irrational that it shocks the conscience." (*Id.*). The Court explained:

> Public employment, such as the type at issue in this case, does not create a substantive due process claim. . . . Public employment is a State-created

4

> property interest. Plaintiffs' alleged right to employment with Passaic County is a State law contract right. Accordingly, [P]laintiffs have failed to prove the existence of a fundamental interest, and summary judgment is warranted in [Defendants'] favor.

(*Id.* at 76). *Finally*, the Court addressed whether Plaintiffs possessed a property interest under the Procedural Due Process Clause of the Fourteenth Amendment. (*Id.* at 17-77). The Court held that (i) Plaintiffs "did not have property interest since they were not correction officers at the time and were not permanent since they had not completed the requirements of the WTP; and (ii) "there is not a property interest in reemployment." (*Id.* at 74). Plaintiffs, however, represented that "the property interest that [they] are asserting and stating is the fact that they do have a protected property interest to be on that list," and the Court reserved its decision on this issue. (*Id.* at 17-77). So, the only remaining issue is whether Plaintiffs have "a property interest to be on the eligibility list." (*Id.* at 76).

On January 8, 2016, Plaintiffs moved for reconsideration of the Court's decision on the third and fourth issue—"on the granting of summary judgment as to the substantive due process claim and a part of the procedural due process claim." (D.E. No. 139-1 ("Pls. Recon. Mov. Br.") at 4). Defendants opposed Plaintiffs' motion (D.E. No. 142 ("Defs. Recon. Opp. Br.")), and Plaintiffs submitted a reply in further support of their motion (D.E. No. 143 ("Pls. Recon. Reply Br.")).

Defendants filed another motion for summary judgment on December 8, 2017. (D.E. No. 174-2 ("Defs. Mov. Br."); D.E. No. 175). Plaintiffs opposed Defendants' motion. (D.E. No. 180-3 ("Pls. Opp. Br.")). And Defendants submitted a reply in further support of their motion. (D.E. No. 184 ("Defs. Reply Br."); D.E. No. 185).

Accordingly, there are two pending motions before the Court: (i) Plaintiffs' motion for reconsideration; and (ii) Defendants' motion for summary judgment. The Court will address each motion in turn.

## II. DISCUSSION

### A. Plaintiffs' Motion for Reconsideration

On January 8, 2016, Plaintiffs moved for reconsideration "on the granting of summary judgment as to the substantive due process claim and a part of the procedural due process claim." (Pls. Recon. Mov. Br. at 4). According to Plaintiffs, the Court should reconsider its December 22, 2015 ruling for two reasons: (i) because Defendants failed to argue that substantive due process was not properly alleged in the Complaint; and (ii) because Defendants failed to argue that no property right exists. (*Id.* at 6-8).

#### i. Legal Standard

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i), which states: "Unless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59), a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. . . ."

#### ii. Analysis

This Court entered judgment regarding the underlying matter on December 22, 2015. (*See* D.E. No. 137). Plaintiffs filed this motion on January 8, 2016—seventeen days later. Plaintiffs did not offer any explanation for why they failed to file their motion in a timely fashion and did not request an extension of time to file the motion beyond the fourteen-day limitation period set by the local rules. Plaintiff's motion is therefore denied as untimely. *See Adams USA, Inc. v. Reda Sports, Inc.*, 220 F. App'x 139, 141 (3d Cir. 2007) ("An untimely motion for reconsideration is

'void and of no effect.'") (quoting *Amatangelo v. Borough of Donora*, 212 F.3d 776, 780 (3d Cir. 2000)); *Mitchell v. Twp. of Willingboro Municipality Gov't*, 913 F. Supp. 2d 62, 78 (D.N.J. 2012) (denying defendant's motion for reconsideration as untimely because "it was filed outside the fourteen-day period prescribed by L. Civ. R. 7.1(i)"); *Venner v. Delran Twp.*, No. 05-2480, 2007 WL 1231785, at *1 (D.N.J. Apr. 24, 2007) (denying as untimely motion for reconsideration filed one week late); *XL Specialty Ins. Co. v. Westmoreland Coal Co.*, No. 06-1234, 2006 WL 2241517, at *2 (D.N.J. Aug. 4, 2006) (noting that defendant's one-day delay "alone is sufficient to deny Defendant's motion").[5]

While the Court notes that any local rule "may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice," *see* L. Civ. R. 83.2(b), Plaintiffs' submission fails to articulate any surprise or injustice that would result in the Court's adherence to Local Civil Rule 7.1(1) (*see* Pls. Recon. Reply Br. at 2). Rather, in replying to Defendants' opposition to their motion, Plaintiffs state that "as for the issue of timeliness of the instant motion, it is notable that Defendants themselves missed the summary judgment deadline by months, and were only granted leave to file summary judgment motions after *Plaintiffs'* counsel wrote to the Court back in June of 2013 requesting a trial date after the dispositive motion deadline had passed." (*See* Pls. Recon. Reply Br. at 2). Like Defendants, Plaintiffs—who have been represented by counsel throughout the course of this protracted litigation—also could have sought leave at the appropriate time to file an untimely motion for reconsideration. Given Plaintiffs' failure to articulate any surprise or injustice that would result from the Court's adherence to Local Civil Rule 7.1(i), the Court will deny Plaintiffs' motion. *See Pharmacia Corp. v. Motor Carrier Servs. Corp.*, No. 04-3724, 2008

---

[5] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

7

WL 852255, at *6 (D.N.J. Mar. 28, 2008) (noting that where the time for filing a reconsideration motion has run, the issue as to which reconsideration is sought "is best left to the Third Circuit").

### B. Defendants' Motion for Summary Judgment

#### i. Legal Standard

Summary judgment is appropriate if the moving party shows that there is "no genuine issue of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The burden is on the moving party to show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant meets this burden, the non-movant must then set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* at 324; *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).

Conversely, where the moving party bears the burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007). "Put another way, it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238.

Notably, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But the non-moving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that the non-moving party must support its claim "by more than a mere scintilla of evidence").

### ii. Analysis

***Exhaustion of Administrative Remedies.*** In support of their motion, Defendants first argue that "Plaintiffs' Complaint should be dismissed because this matter must be determined by New Jersey's Civil Service Commission." (Defs. Mov. Br. at 9-14). Defendants advanced the same argument verbatim in a prior motion for summary judgment. (*See* D.E. No. 130-15 at 9-14). And the Court ruled on the issue during the December 22, 2015 hearing:

> The Court agrees with [P]laintiff[s] that the instant action is properly before the District Court. One, the Court concludes that a Civil Service Commission would not be the proper forum for [P]laintiffs to assert 1983 claims. Exhaustion of State remedies is not required prior to bringing a 1983 claim. To that effect, the CSC is not the proper forum for [P]laintiffs. Moreover, even if [P]laintiffs were seeking clarification of the CSC order, it explicitly states that "any further review should be pursued in a judicial form", Civil Service Commission May 27, 2009 order at 13. Accordingly, the Court concludes that [P]laintiff[s'] claims are properly before the Court and declines to dismiss the [C]omplaint.

(Tr. at 4). Despite the fact that Defendants did not file a motion for reconsideration following the Court's previous ruling, they nevertheless rehash identical arguments in their instant motion.

"The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997). The rule was developed "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009). Although law of the case is a matter of the court's discretion, a court faced with revisiting a prior decision in the

9

case "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). In addition, a court may revisit its own decisions or one of a coordinate court where (i) new evidence is available; (ii) "a supervening new law has been announced"; or (iii) "whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *Id.* None of those circumstances exist here, and Defendants do not argue otherwise. Accordingly, the Court declines to revisit its decision. *See Perrotta v. LG Elecs. USA, Inc.*, No. 12-0246, 2013 WL 4446975, at *6 (D.N.J. Aug. 15, 2013) (declining to revisit prior decision where moving party did not address circumstances warranting revisiting a prior decision).

***Procedural Due Process.*** At this stage of the litigation, Plaintiffs' only surviving claim is a 42 U.S.C. § 1983 claim against Defendants for an alleged violation of their rights under the Fourteenth Amendment's Due Process Clause. The Fourteenth Amendment prohibits deprivations "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *Solomon v. Philadelphia Hous. Auth.*, 143 F. App'x 447, 451 (3d Cir. 2005). Under § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[6]

---

[6] Section 1983 does not create substantive rights, but rather creates "a remedy only for the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Thus, to state a claim under § 1983, Plaintiff must allege (i) the violation of a right secured by the Constitution or laws of the United States; and (ii) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Moreover, to assert a §1983 claim against a municipality, a plaintiff must show that the government official was acting pursuant to a municipal policy or custom. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (observing that a plaintiff can establish municipal liability under § 1983 through either an official policy or custom); *Harley v. City of New Jersey City*, No. 16-5135, 2017 WL 2779466, at *7 (D.N.J. June 27, 2017).

10

When analyzing a § 1983 claim alleging a state actor's failure to accord appropriate levels of procedural due process, the Court's inquiry is bifurcated. *Solomon*, 143 F. App'x at 452. The Court must first determine whether the asserted interest is encompassed within the Fourteenth Amendment's protection of life, liberty, or property. *Id.* And, if so, the Court then asks whether the procedures available provided the plaintiff with adequate due process. *Id.*

Here, Plaintiffs assert that they "have protected property interests in their placement on the re-employment list." (Pls. Opp. Br. at 16). "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 126 (3d Cir. 1985). State law determines whether such a property interest exists. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005); *McCool v. City of Philadelphia*, 494 F. Supp. 2d 307, 321 (E.D. Pa. 2007). A property interest may be "created expressly by state statute or regulation or aris[e] from government policy or a mutually explicit understanding between a government employer and an employee." *Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3d Cir. 1993); *see also Stana*, 775 F.2d at 126 ("Property interests . . . can also arise from written or unwritten state or local government policies or from 'mutually explicit understandings' between a government employer and employee.") (citing *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)).

"The Court of Appeals for the Third Circuit has held that presence on an eligibility list does not create a property interest triggering procedural due process requirements where occupancy of even a high position on the list entitles an applicant to 'nothing more than *consideration* for employment when openings occur.'" *McCool*, 494 F. Supp. 2d at 322 (citing *Anderson v. City of*

11

*Philadelphia*, 845 F.2d 1216, 1220 (3d Cir. 1988)). "In contrast, where occupancy of a position on the eligibility list is a 'central factor' in the employer's 'communicated policy' to award positions, remaining on the eligibility list constitutes a 'legitimate entitlement.'" *Id.* (citing *Stana*, 775 F.2d at 126-27)).

Here, the parties agree that the Court should look to New Jersey statues and regulations to assess Plaintiffs' alleged property interest. (*See* Defs. Mov. Br. at 20; Pls. Opp. Br. at 17). The New Jersey Administrative Code sets forth the standard for an appointing authority to follow when a permanent appointment is to be made from a certified list. *See* N.J.A.C. 4A:4–4.8.[7] Moreover, N.J.A.C. 4A:4–3.7(a)1 sets forth the priority of eligible lists and gives first priority to "[s]pecial reemployment" lists. Further, N.J.A.C. 4A:8–2.3 provides: (i) "[s]pecial reemployment lists shall take priority over all other reemployment lists . . . except those resulting from position reclassifications . . ."; (ii) "[e]mployees shall be placed on a special reemployment list for an unlimited duration"; and (iii) "[a]ppointments shall be made in the order certified." N.J.A.C. 4A:8–2.3(b)1, (c), (c)3.

Remaining on an eligible list, however, is subject to the provisions of N.J.A.C. 4A:4–4.7, which allows removal from an eligible list for, among other reasons, causes for disqualification listed in N.J.A.C. 4A:4–6.1; inability, unavailability, or refusal of eligible to accept appointment; the existence of a criminal record; or "[o]ther valid reasons as determined by the Chairperson or

---

[7] N.J.A.C. 4A:4–4.8 provides in relevant part:
(a) Upon receipt of a certification, an appointing authority shall take whichever of the following actions is appropriate when a permanent appointment is to be made:
    1. Appoint the eligible whose name has been certified from the special reemployment list;
    2. Appoint the eligible whose name has been certified from regular or police, sheriff's officer, or fire reemployment lists; or
    3. Appoint one of the top three interested eligibles (rule of three) from an open competitive or promotional list . . . .

designee."[8] N.J.A.C. 4A:4–6.1 likewise provides several reasons why a person may be denied examination eligibility or appointment, including lacking the job requirements, physical or psychological unfitness, or "[o]ther sufficient reasons."[9]

Defendants argue that Plaintiffs possess no property interest in being placed on an eligible list for employment. (Defs. Mov. Br. at 18-25). They note, among other things, that "the Civil Service Commission, in its final decision agreed that a property interest does not exist from being on an eligibility list." (*Id.* at 22 (quoting the CSC May 27, 2009 Decision at 9)). They also point out that, under "Title 4 of the New Jersey Administrative Code, [P]laintiffs could be removed from

---

[8] N.J.A.C. 4A:4–4.7 provides in relevant part that:
(a) The name of an eligible may be removed from an eligible list for any of the following reasons:
    1. The causes for disqualification listed in N.J.A.C. 4A:4–6.1; . . .
    3. Inability, unavailability or refusal of eligible to accept appointment. . . . ;
    4. The eligible has a criminal record which adversely relates to the employment sought.
        i. The following factors may be considered in determining whether a criminal record adversely relates to employment:
            (1) The nature and seriousness of the crime;
            (2) The circumstances under which the crime occurred;
            (3) The date of the crime and age of the eligible when the crime was committed;
            (4) Whether the crime was an isolated event; and
            (5) Evidence of rehabilitation.
        ii. The presentation of a pardon or an expungement shall prohibit removal from a list, except for law enforcement, correction officer, juvenile detention officer, firefighter, or judiciary titles and other titles as the Chairperson or designee may determine.
    5. Notice by the postal authorities that they are unable to locate or deliver mail to the eligible;
    6. Non-compliance with the instructions listed on the notice of certification;
    7. Discontinuance of an eligible's residence in the jurisdiction to which an examination was limited or for a title for which continuous residency is required;
    8. Discontinuance of the eligible's employment in the unit scope to which a promotional examination was limited . . . . ;
    10. Failure to maintain interest in a geographical area or choice; and
    11. Other valid reasons as determined by the Chairperson or designee.

[9] N.J.A.C. 4A:4–6.1 provides in relevant part that:
(a) A person may be denied examination eligibility or appointment when he or she:
    1. Lacks the job requirements;
    2. Is ineligible, by law, for employment in the title;
    3. Is physically or psychologically unfit to perform effectively the duties of the title. . . . ;
    4. Has failed to pass examination procedures;
    5. Has been removed from the public service for disciplinary reasons after an opportunity for a hearing;
    6. Has made a false statement of any material fact or attempted any deception or fraud in any part of the selection or appointment process;
    7. Has a prior employment history which relates adversely to the title; . . . or
    9. Other sufficient reasons.

13

the eligibility list for a number of reasons." (*Id.* at 24). Finally, they argue that Plaintiffs identified no property interest to which they had a legitimate claim of entitlement and therefore Plaintiffs' due process claims must fail. (*Id.* at 24).

Plaintiffs counter that their legitimate claim of entitlement is "grounded in statutes and regulations." (Pls. Opp. Br. at 17). According to Plaintiffs, "the applicable civil service statutes and regulations mandated that the list exist permanently until it is exhausted, that the individuals on the list remain on the list, that the department must hire in the order of the list, and that they may not hire other officers until the list is exhausted." (*Id.*). In support of their position, Plaintiffs rely on *Stana*, where the Third Circuit held that a teacher had a "legitimate entitlement" to remaining on an eligibility list. (*Id.* at 16 (citing 775 F.2d at 126)).

In *Stana*, a certified teacher was removed from an eligibility list after the school district received and reviewed (without giving the teacher an opportunity to be heard) a confidential negative evaluation of her by her current employer. 775 F.2d at 127. The relevant statute there provided that "no person shall be appointed . . . whose name does not appear among the three highest names upon the proper eligible list." *Id.* at 126 n.2. In addition, the school district "had an established policy for placement and rank on the list and for maintenance of names on that list for a specified period of time." *Id.* at 126. The court held that the school district, through the policies it promulgated to implement the state statute on teacher hiring, created a "legitimate entitlement" in "remaining on the eligibility list." *Id.* This combination of the existing policy or rule and "an explicit understanding" was sufficient to constitute a property interest, which triggered procedural due process requirements. *Id.* at 126-27. More recently, the Third Circuit expounded on its rationale in *Stana* and explained that "[i]n holding a school employee's place on an employment eligibility list constituted a protected property interest, we accepted plaintiff's

argument that the school district's policy for maintaining the list created a 'mutually explicit understanding' that a person who earned a place on the eligibility list will not be removed from the list for four years." *Baraka v. McGreevey*, 481 F.3d 187, 206 (3d Cir. 2007) (citing *Stana*, 775 F.2d at 126).

By contrast, in *Anderson* (which was decided after *Stana*), the Third Circuit held that occupancy of "high positions on the civil service eligibility lists" entitled the plaintiff, a law enforcement candidate, to "nothing more than consideration for employment when openings occurred" and, therefore, did not constitute a property interest triggering due process requirements. 845 F.2d at 1220-21. The court anchored its holding in the discretion "given to agencies in setting hiring procedures and making hiring decisions evident in the governing statute." *Id.* at 1221 n.4.

"Thus, the primary factor for determining whether a position on an eligibility list is a 'legitimate entitlement' is whether the employer has a *communicated* general policy of hiring people off the list *without further consideration of their candidacy or discretion*." *McCool*, 494 F. Supp. 2d at 323-24 (emphasis in original) (comparing *Stana*, 775 F.2d at 127 n.3 (holding that "remaining on the eligibility list, which was a prerequisite to a teaching position, was a 'legitimate entitlement' that the School District had created through the policies it promulgated") with *Anderson*, 845 F.2d at 1221 (holding that where employers "may and do exercise broad discretion in hiring . . . there can be no tenable claim of entitlement to employment," regardless of status on an eligibility list)).

Here, Plaintiffs allege that they "have protected property interests in their placement on the re-employment list" and that their legitimate claim of entitlement is "grounded in statutes and regulations." (Pls. Opp. Br. at 16-17). They do not assert, however, that New Jersey law requires—or that the PCSD had a communicated policy of—hiring candidates without further

discretionary consideration once their number on the eligibility list was reached. (*See generally* Compl.; Pls. Opp. Br.). As the Third Circuit made clear in *Anderson* and *Elmore* (both decided after *Stana*), mere presence on an eligibility list alone is insufficient to create a "legitimate entitlement" triggering procedural due process protections. *McCool*, 494 F. Supp. 2d at 324.

Indeed, the undisputed CSC May 27, 2009 Decision (i) recognizes the PCSD's discretionary consideration in appointing individuals on eligibility lists; (ii) explicitly states that "the revival of a list or standing on a special reemployment list does not *per se* mandate the appointment of an eligible's name"; and (iii) recognizes that "it has been well established that the only interest that results from placement on an eligible list is that the candidate will be *considered* for an applicable position so long as the eligible list remains in force." (CSC May 27, 2009 Decision at 8-9). Specifically, the CSC May 27, 2009 Decision states:

> As the Sheriff's Department correctly notes, the revival of a list or standing on a special reemployment list does not *per se* mandate the appointment of an eligible's name. . . . To accept the rationale that revival of a list under these circumstance mandates an appointment in effect would preclude an appointing authority from performing an updated background check on an individual. Clearly, this would be unacceptable, particularly if something changed in an individual's background from the time of layoff to list revival that would preclude the person from the particular type of employment, such as loss of a driver's license, the issuance of a restraining order, change of residency, or even the commission of a crime.
> Accordingly, the revival of a subject list under these provisions does not mandate the appointment of the eligible whose names appear on the list. Rather, similar to any other individual whose name appears on an eligible list, it simply provides them with another *opportunity* for employment. *See In re Crowley*, *supra*, *Schroder v. Kiss*, 74 N.J. Super. 229 (App. Div. 1962). Indeed, it has been well established that the only interest that results from placement on an eligible list is that the candidate will be considered for an applicable position so long as the eligible list remains in force. *Nunan v. Dep't of Personnel*, 244 N.J. Super. 494 (App. Div. 1990)

(*Id.*; *see also* D.E. No. 180-7, Lockman Decl. Ex. X at 8-9) (emphasis in original). Moreover, the undisputed CSC September 25, 2008 Decision, which initially revived the eligible lists, states that

16

"the subject eligible lists shall be revived until the above noted laid off individuals have had an *opportunity* for employment." (CSC September 25, 2008 Decision at 5).

The New Jersey Administrative Code also gives an appointing authority discretion to remove a candidate from an eligible list. As noted above, the Code provides that the name of an eligible may be removed from an eligible list for, among other reasons, "valid reasons as determined by the Chairperson or designee." N.J.A.C. 4A:4–4.7(a)11. And a separate provision of the Code likewise provides that a person may be denied examination eligibility or appointment for lacking the job requirements, physical or psychological unfitness, or "[o]ther sufficient reasons." N.J.A.C. 4A:4–6.1(a)1, 3, 9.

The CSC May 27, 2009 Decision echoes the provisions of the New Jersey Administrative Code:

> Turning to the specific removal requests, N.J.A.C. 4A:4–4.7(a)1, in conjunction with N.J.A.C. 4A:4–6.1(a)7, allows the Commission to remove an individual from an eligible list who has a prior employment history which relates adversely to the position sought. N.J.A.C. 4A:4–4.7(a)1, in conjunction with N.J.A.C. 4A:4–6.1(a)9, allows the Commission to remove an eligible's name from an eligible list for *other sufficient reasons*. Removal for other sufficient reasons includes, *but is not limited to*, a consideration that based on a candidate's background and recognizing the nature of the position at issue, a person should not be eligible for appointment.

(CSC May 27, 2009 Decision at 10). This same decision, on which Plaintiffs rely to establish their purported property interest (*see* Pls. Opp. Br. at 23, 25-26), also states that Plaintiffs "should be restored to the list *and absent any disqualifications ascertained through an updated background check*, should be appointed as County Correction Officers *subject to completion of a new 12-month working test period.*" (*Id.* at 13). This is hardly a circumstance where "the employer has a *communicated* general policy of hiring people off the list *without further consideration of their candidacy or discretion*" to create a "legitimate entitlement." *See McCool*, 494 F. Supp. 2d at 323-

17

24 (emphasis in original). And Plaintiffs have failed to set forth any specific facts that suggest otherwise.

Plaintiffs therefore have failed to demonstrate that they have been deprived of property to which they have a legitimate claim of entitlement. The facts here are similar to those in *Anderson*, where the Third Circuit held that being on the eligibility list "entitled the plaintiffs to nothing more than consideration for employment when openings occurred." 845 F.2d at 1220. The court concluded that where the defendants "may and do exercise broad discretion in hiring," there "can be no tenable claim of entitlement to employment." *Id.* at 1221. As Plaintiffs concede, Plaintiffs' presence on the eligibility list entitles them to nothing more than consideration for employment, not a guaranteed position. (*See* Pls. Opp. Br. at 17 ("Indeed, it has been well established that the only interest that results from placement on an eligible list is that the candidate will be considered for an applicable position so long as the eligible list remains in force.")). And as noted above, the CSC and the New Jersey Administrative Code afford Defendants the ability to review an eligible's candidacy and apply discretion in hiring. In light of these undisputed facts, the Court concludes that Plaintiffs did not have a property interest in the eligible list. Accordingly, the Court grants Defendants' motion for summary judgment on this claim.

## III. CONCLUSION

For these reasons, the Court DENIES Plaintiffs' motion for reconsideration and GRANTS Defendants' motion for summary judgment. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
